## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CARIBE D. BILLIE, | ) | 3:22-cv-1608 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PLYMOUTH ROCK ASSURANCE | ) | |
| CORP., *et al.*, | ) | |
| *Defendants*. | ) | March 24, 2025 |

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

Plaintiff Caribe D. Billie purchased a house at 35 Wall Street in Waterbury, Connecticut in July of 2019. The house was damaged in a fire on December 1, 2020, approximately a month after Plaintiff purchased insurance coverage for the home from Defendant Plymouth Rock Home Assurance Corporation ("Plymouth Rock Home"). Following Plaintiff's alleged failure to cooperate with the insurance investigation, Plymouth Rock Home denied Plaintiff's claim for coverage.

Plaintiff, proceeding *pro se*, brought claims for breach of contract and violation of the Connecticut Unfair Insurance Practices Act ("CUIPA"), through the Connecticut Unfair Trade Practices Act ("CUTPA") against Defendants Plymouth Rock Assurance Corporation ("Plymouth Rock Assurance") and Plymouth Rock Home. *See* Compl., ECF No. 1-1 at 3–6.[1] Plymouth Rock Home and Plymouth Rock Assurance have moved for summary judgment on Plaintiff's complaint in full. Mot. Summ. J., ECF No. 58. Plaintiff has failed to respond to the motion. For the reasons described below, the Court GRANTS Defendants' motion for summary judgment.

---

[1] The Court previously dismissed Plaintiff's claims against the Connecticut Insurance Department. *See* Order, ECF No. 28.

## I.    BACKGROUND

As Plaintiff has not responded to the motion for summary judgment, the factual background is taken solely from Defendants' Local Rule 56(a)1 Statement, ECF No. 59 ("Defs.' L.R. 56(a)1 St."). The Local Rules provide that "[e]ach material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." D. Conn. L. Civ. R. 56(a)1. Accordingly, because Plaintiff failed to file a Local Rule 56(a)2 Statement, the Court deems the facts in Defendants' Local Rule 56(a)1 Statement admitted, where they are supported by evidence in the record. *See Johnson v. Conn. Dep't of Admin. Servs.*, 972 F. Supp. 2d 223, 229 (D. Conn. 2013).

A.    Factual Background

1.    *Plaintiff's Purchase of the Property*

On July 25, 2019, Plaintiff purchased the property located a 35 Wall Street in Waterbury, Connecticut, for $16,000 at a tax auction. Defs.' L.R. 56(a)1 St. ¶ 2. He initially bought the property as an investment, which he planned to renovate and sell. *Id.* ¶ 43. Because the property was unoccupied at the time, Plaintiff moved his cousin, Edward Hayward, into the property. *Id.* ¶ 8. Without Plaintiff's knowledge, Mr. Hayward moved additional occupants into the property. *Id.* ¶ 9. Upon learning about these additional occupants, Plaintiff began to collect rent from them, rather than evicting them. *Id.*

Plaintiff testified at his deposition that he moved to North Carolina in 2019, because it was too cold in Connecticut and because people in Connecticut had threatened his life. *Id.* ¶¶ 42, 49. He continued to commute between Connecticut and North Carolina for work and other purposes.

*Id.* ¶ 44. When he was in Connecticut, Plaintiff would stay with one of his children or at 35 Wall Street while Mr. Hayward was living there. *Id.* ¶¶ 44–45.

On September 4, 2020, the Waterbury Fire Marshal issued a board-up notice for 35 Wall Street after a site inspection revealed that the property, a single-family house, was being used as a boarding house without the necessary permits. *Id.* ¶ 10. The City of Waterbury then removed and relocated all the occupants living at 35 Wall Street. *Id.* ¶ 11. Plaintiff testified that, following this, he decided to move to 35 Wall Street, along with some of his children and their families. *Id.* ¶ 48. On September 29, 2020, Plaintiff requested a remodeling permit from the City of Waterbury Building Department in order to replace the property's windows and doors; the Building Department issued the permit on October 15, 2020. *Id.* ¶ 16. The Building Department's records do not show whether the work was ever completed. *Id.* In addition, an electrical permit to re-energize the building at 35 Wall Street as a single-family home was requested from the Building Department by ASL Electric on October 28, 2020, and was issued on October 30, 2020. *Id.* ¶ 18.

On the same day that the electrical permit was issued, Plymouth Rock Home issued a homeowners insurance policy (the "Policy") insuring the 35 Wall Street property, effective October 30, 2020, to October 30, 2021. *Id.* ¶ 1; Policy Certification, ECF No. 59-1 at 1. It is unclear whether the property was insured prior to the Policy, as Plaintiff has given contradictory testimony on that issue. He testified both that he had never purchased insurance on the property before purchasing the Policy, and that he *had* insured the property beforehand and obtained the Policy after he decided to move to 35 Wall Street. Defs.' L.R. 56(a)1 St. ¶¶ 51–52.

### 2.  The Policy

Coverage A of the Policy, for which the limit was $302,000, applied to the dwelling on the 35 Wall Street property.  ECF No. 59-1 at 2.  As the named insured, Plaintiff was required to comply with certain duties in order to receive coverage under the Policy, as reproduced below:

C.  Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us.  These duties must be performed either by you, an "insured" seeking coverage, or a representative of either: . . .

5.  Cooperate with us in the investigation of a claim; . . .

7.  As often as we reasonably require:

a.  Show the damaged property;

b.  Provide us with records and documents we request and permit us to make copies; and

c.  You, any "insured" and anyone you hire in connection with your claim must:

(1)  Submit to examinations under oath and recorded statements, while not in the presence of any other "insured"; and

(2)  Sign the same.

Representations made by any of the preceding persons who appear in examinations under oath or recorded statements will be deemed to be your representations.

*Id.* at 54.  The Policy provided that no legal action could be brought against Plymouth Rock Home without full compliance with these duties.  *Id.* at 69.

### 3.  The Fire and Insurance Investigation

The structure on the property failed its electrical inspection on November 18, 2020.  Defs.' L.R. 56(a)1 St. ¶ 19.  On December 1, 2020, the property experienced a fire.  *Id.* ¶ 20.  At that time, the building did not have electrical service.  *Id.* ¶ 22.  The incident report by the City of Waterbury Fire Department indicated that the structure was vacant with "evidence of

improvements being done" but that there was also "evidence of vagrant activity" in the attic area of the home.  City of Waterbury Fire Department Report, ECF No. 59-5 at 114.  The report also noted that a lit candle, space heater, and floor lamp were found on the premises, as well as evidence that a generator may have been used by construction workers.  *Id.*  The police and the Fire Department were ultimately unable to conclusively determine the cause of the fire, but they suspected that it was caused by an unknown human source.  Defs.' L.R. 56(a)1 St. ¶ 21; Billie Recorded Statement, ECF No. 59-6 at 50 (Plaintiff reporting to insurance fire investigator that the Fire Marshal stated the fire was "caused by human hands").

Following the fire, Plaintiff submitted a claim to Plymouth Rock Home, with a rough estimate of $226,991.45 in damages to the dwelling on the 35 Wall Street property.  Defs.' L.R. 56(a)1 St. ¶ 25; Leslie Decl., ECF No. 59-14 at 42.  After an initial review of the circumstances of the loss, Plymouth Rock Home issued a reservation of rights letter to Plaintiff and commenced an investigation into the claim.  Defs.' L.R. 56(a)1 St. ¶ 24.  In particular, Plymouth Rock Home became suspicious of the circumstances of the fire upon discovering that Plaintiff's claim on the 35 Wall Street property was his fourth fire loss claim against an insurer:  (1) in 2017, Plaintiff was paid more than $289,000 in response to two claims for fire damage at a property at 350 Fifth Street in Bridgeport, Connecticut, which he purchased without using any of his own money, as the mortgage was separately paid off by the insurer; (2) in 2018, Plaintiff was paid more than $200,000 in response to a claim of fire damage at a property at 19 Derby Avenue in Derby, Connecticut, which he purchased for $99,000; and (3) in 2016 or 2017, Plaintiff recovered an unspecified

amount in response to an insurance claim based on a fire in a motor vehicle.[2]  *Id.* ¶¶ 4–7; Defs.'
Br., ECF No. 58-1 at 9; ECF No. 59-6 at 45–49.

To assist him with filing the insurance claim on the 35 Wall Street property, Plaintiff
retained John Cotter, a public insurance adjuster who Plaintiff had retained in the past to assist
with the insurance claims involving the fires at his other properties.  Cotter Dep., ECF No. 59-13
at 6.  On February 25, 2021, as part of its investigation, counsel for Plymouth Rock Home
(Attorney John Leslie) requested documents from Plaintiff, including financial records, tax
statements, and banking information from 2019 to present, as well as records of improvements
made to the property.  Defs.' L.R. 56(a)1 St. ¶ 26; ECF No. 59-14 at 6.[3]

After a month passed without receiving any documents from Plaintiff, Attorney Leslie
followed up with Plaintiff on March 31, 2021, reiterating his request for the documents.  Defs.'
L.R. 56(a)1 St. ¶ 38.  Attorney Leslie followed up six more times over the next eighteen months,
seeking responsive documents from Plaintiff.  *Id.* ¶ 38.  Plaintiff acknowledged receipt of at least
some of these communications.  *See generally id.*  ¶¶ 25–35.

Yet the only documents that Plaintiff produced, through Mr. Cotter, were three documents
relating to work done at the property prior to the fire; an 18-page rough draft of a property damage
estimate; an invoice for the emergency response to the fire; photographs of the fire damage to the
property; records for certain bank accounts held by Plaintiff that excluded records from the one-
year period prior to the fire; and copies of the signed checks from Plaintiff's prior fire loss claims.

---

[2] Plaintiff has given inconsistent testimony as to whether he used the homeowners insurance proceeds to repair the
properties.  During his initial statement to Plymouth Rock Home, he claimed that he did not use the proceeds to repair
the properties.  Defs.' L.R. 56(a)1 St. ¶ 55; ECF No. 59-6 at 45–49.  Then, in his July 2021 examination under oath,
Plaintiff testified that although the property at 19 Derby Avenue was repairable, it would cost too much to repair, so
he sold the property.  Defs.' L.R. 56(a)1 St. ¶ 56.  But when he was deposed, Plaintiff testified that he *did* repair the
19 Derby Avenue after the fire and used all or almost all of the insurance proceeds to pay for the repairs.  *Id.* ¶¶ 57–
58.
[3] The letter to Plaintiff from Attorney Leslie refers to the insurer as Bunker Hill Insurance Company, which Attorney
Leslie clarifies was a prior name for Plymouth Rock Home.  ECF No. 59-14 ¶ 6.

ECF No. 59-14 ¶¶ 13–14; Defs.' L.R. 56(a)1 St. ¶ 34.  Plaintiff produced these documents through Mr. Cotter in May and June of 2021.  ECF No. 59-14 ¶¶ 13–14.  On July 28, 2021, Attorney Leslie conducted Plaintiff's examination under oath, despite not having received all of the documents he had requested from Plaintiff.  *Id.* ¶ 16.

Plaintiff did not produce any further documents.  On September 2, 2022, Attorney Leslie sent Plaintiff a letter to once again request the documents and advise Plaintiff that Plymouth Rock Home would conclude that he did not wish to cooperate with the investigation if the documents were not received within thirty days.  *Id.* ¶ 24.  Having received no response from Plaintiff, Plymouth Rock Home issued a letter dated November 18, 2022, denying his claim.  *See* Billie Dep. Ex. T, ECF No. 59-5 at 343–45.

B. Procedural History

On November 17, 2022, a day before the date on Plymouth Rock Home's letter denying Plaintiff's claim,[4] Plaintiff brought this action for breach of contract and a CUIPA violation against Plymouth Rock Assurance, Agent Bizi 123 Insurance Zebra Inc,[5] and the Connecticut Insurance Department in Connecticut Superior Court.  ECF No. 1-1 at 3–5.  In his complaint, Plaintiff alleges that the "insurance company refused to honor [his] complaint," leaving his house at 35 Wall Street "sitting abandoned."  *Id.* at 3.  Having been informed that the City of Waterbury planned to sell his property at an auction, he requests that the "insurance company" pay for all repairs, or, in the event that he is unable to keep the property, that the "insurance company" pay to replace his property.

---

[4] Although the copies of the letter provided to the Court show that it was dated November 18, 2022, it appears that Plaintiff was made aware of the denial of his claim before November 17, 2022.  Defendants claim that Plaintiff instituted the lawsuit following issuance of the denial letter, *see* Defs.' Br. at 12, and the transcript of Plaintiff's deposition reveals that Mr. Cotter may have received the letter on November 11, 2022, *see* Billie Dep., ECF No. 59-4 at 72.

[5] This Defendant was never served.  *See* Notice, ECF No. 8 ¶ 5.  It is unclear whether "Agent Bizi 123 Insurance Zebra Inc" was ever intended to be a defendant, as there are no allegations against it in the complaint.  *See* ECF No. 1-1 at 3–5.

*Id.* Plaintiff additionally alleges that Plymouth Rock Assurance, as a general business practice, misrepresents pertinent facts and insurance policy provisions relating to coverage in violation of CUIPA. *Id.* at 5. As support, the complaint cites a number of specific complaints filed with the State of Connecticut Insurance Department allegedly related to claim delays, unfair claims practices, unfair denial of claims, unfair claims procedures, and unsatisfactory settlement offers. *Id.*

On December 19, 2022, Plymouth Rock Assurance timely removed the action to federal court on the basis of diversity jurisdiction. *See* Not. of Removal, ECF No. 1 at 2–3. The Court then granted the Connecticut Insurance Department's motion to dismiss on the ground that the Department, a state agency, had not waived its sovereign immunity under any of the statutes at issue in the action. *See* Order, ECF No. 28.

In the parties' amended Rule 26(f) report, Plymouth Rock Assurance advised that Plaintiff had sued the wrong party—it was Plymouth Rock *Home* Assurance Corporation, not Plymouth Rock Assurance Corporation, that issued the insurance policy at issue in this action. ECF No. 30 at 3. Following a series of notices and orders regarding the dismissal of Plymouth Rock Assurance from the action and effecting service on Plymouth Rock Home without any action from Plaintiff, *see* ECF Nos. 31, 33, 34, 35, 39, 40, 43, 45, the Court ultimately deemed service accepted by Plymouth Rock Home, because of the representation of both Plymouth Rock Home and Plymouth Rock Assurance by the same counsel, Plaintiff's *pro se* status, and the Court's desire to move the matter forward expeditiously. *See* Order, ECF No. 46. The Court declined to drop Plymouth Rock Assurance from the action at that time, stating that that Defendant could seek summary judgment at the appropriate time if it was improperly named. *See* ECF No. 35.

The discovery period in this case closed on May 15, 2024. *See* Order, ECF No. 49. Plaintiff never provided Defendants with initial disclosures or a damages analysis, despite having been reminded by the Court of this responsibility on November 15, 2023. *See* Defs.' Br. at 33–35; Order, ECF No. 49 (the Court noting, in its order amending the scheduling order, that Plaintiff had propounded no discovery and failed to provide Defendants with initial disclosures or a damages analysis). Plaintiff also failed to appear at a Zoom hearing in October of 2023. *See* Minute Entry, ECF No. 48.

Defendants moved for summary judgment with respect to all of Plaintiff's claims. *See* ECF No. 58 at 1. They also separately moved to preclude any expert testimony submitted by Plaintiff. *See* Mot. to Preclude, ECF No. 61. After Plaintiff missed his July 22, 2024, deadline to respond to Defendants' motions, the Court *sua sponte* extended the deadline to August 9, 2024. *See* Order, ECF No. 64. On August 19, 2024, Plaintiff filed a letter with the Court stating that he did not intend to present expert testimony and explained that his delay was due to illness. *See* Pl.'s Letter, ECF No. 66. In light of Plaintiff's letter, the Court denied as moot Defendants' motion to preclude Plaintiff's expert testimony. *See* Order, ECF No. 67. Plaintiff's letter made no mention of Defendants' pending motion for summary judgment. *See* ECF No. 66.

On February 20, 2025, following the Court's discovery that Defendants failed to give Plaintiff proper notice of the nature of the motion for summary judgment and the consequences of failing to respond to it properly, Defendants sent a copy of the Court's order, ECF No. 68, and the full text of Federal Rule of Civil Procedure 56 and Local Rule 56 to Plaintiff. *See* ECF No. 69. For the second time, the Court *sua sponte* extended Plaintiff's deadline to respond to the motion to March 17, 2025. Order, ECF No. 68. As of the date of this ruling, Plaintiff has not responded. Given that Plaintiff has made no attempt to respond to Defendants' motion for summary judgment

in the six months between his deadline and the date of this ruling, the Court considers the motion unopposed.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial.  It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'"  *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must come forward with evidence

that would be sufficient to support a jury verdict in his or her favor.  *Anderson*, 477 U.S. at 249.

If the non-movant fails "to make a sufficient showing on an essential element of [their] case with

respect to which [they have] the burden of proof," then the movant will be entitled to judgment as

a matter of law.  *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light

most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable

inferences against the movant."  *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation

and internal quotation marks omitted).  "Only when reasonable minds could not differ as to the

import of the evidence is summary judgment proper."  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d

Cir. 1991) (citing *Anderson*, 477 U.S. at 250–51).

Although it is "well established that a court is ordinarily obligated to afford a special

solicitude to *pro se* litigants," *Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010), a court

may enter summary judgment against a *pro se* party who has been advised of the nature of the

motion for summary judgment and the consequences of failing to respond to it properly.  *See*

*Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Even when the motion for summary judgment

is unopposed, however, "the district court may not grant the motion without first examining the

moving party's submission to determine if it has met its burden of demonstrating that no material

issue of fact remains for trial."  *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241,

244 (2d Cir. 2004).  The Court also may not rely solely on the movant's Rule 56.1 statement, as it

"must be satisfied that the citation to evidence in the record" supports the assertions in the

statement.  *Id.*

### III.    DISCUSSION

Defendants move for summary judgment on the grounds that (1) Plymouth Rock Home has no duty to provide coverage for Plaintiff's claim under the Policy because Plaintiff materially failed to cooperate with Plymouth Rock Home's investigation, and (2) he concealed, misrepresented, and/or provided false statements relating to the insurance claim; (3) the Policy does not cover the 35 Wall Street property because Plaintiff never resided there; (4) Plaintiff's failure to comply with this Court's orders prejudiced Plymouth Rock Home; and (5) Plaintiff's claim for violation of CUIPA has no factual basis.  ECF No. 58 at 1.

As an initial matter, the Court finds that it may properly enter summary judgment against Plaintiff, as Plaintiff has been given proper notice of the possible consequences of not responding to the motion for summary judgment.  Pursuant to Local Rule 56(b), Defendants have served him with the "Notice to Self-Represented Litigants Regarding Summary Judgment" and attached copies of the full text of Federal Rule of Civil Procedure 56 and Local Rule 56 in connection with their motion for summary judgment papers.  *See* ECF No. 60; ECF No. 69.  Even without a response from Plaintiff, the Court finds that Defendants are entitled to judgment as a matter of law on the merits.  For the reasons described below, the Court grants Defendants' motion for summary judgment in full.

### A.    Defendant Plymouth Rock Assurance

Plymouth Rock Assurance has maintained since the beginning of this case that it is not the insurer that issued the Policy and is therefore an improper party to this action.  *See* ECF Nos. 30, 31, 33, 34, 35, 39, 40, 43, 45.  Plaintiff does not assert any arguments against Plymouth Rock Assurance in this action; indeed, he would be unable to do so because it was Plymouth Rock *Home* that issued the Policy, *see* ECF No. 59-1 at 1, and Plaintiff's claims are based solely on Plymouth

Rock Home's denial of the underlying insurance claim, *see* ECF No. 1-1 at 3–5.  As Plymouth Rock Assurance is not a proper party to this case, the Court finds that it is entitled to judgment in its favor as to both of Plaintiff's claims.  *See Bernstein v. Metro. Life Ins. Co.*, 453 F. Supp. 2d 554, 561 (D. Conn. 2006) (granting a defendant's motion for summary judgment because the defendant was not a proper party to the instant case).

    B.  <u>Breach of Contract</u>

    For the reasons that follow, the Court finds that Plymouth Rock Home has not breached its contract with Plaintiff, and thus grants Defendants' motion for summary judgment as to the breach of contract claim.  As the Court finds that Plaintiff is not entitled to coverage of the underlying insurance claim because he breached his "Duties After Loss" provision, it need not reach Defendants' other arguments.

    To begin, the Court holds that Connecticut law applies to this dispute.  A federal court exercising diversity jurisdiction "must apply the substantive law of the state in which it sits." *Pappas v. Philip Morris, Inc.*, 915 F.3d 889, 893 (2d Cir. 2019).  Defendants contend that the Court should look to Connecticut law when examining Plaintiff's breach of contract claim, and the Court agrees.  Under Connecticut law, it is well established that it is the function of the Court "to construe the provisions of [a] contract of insurance." *Springdale Donuts, Inc. v. Aetna Cas. & Sur. Co. of Ill.*, 247 Conn. 801, 805 (1999).  The interpretation of an insurance policy, like the interpretation of other written contracts, "involves a determination of the intent of the parties as expressed by the language of the policy." *Id.*  Thus, the determinative question when interpreting insurance policies is the intent of the parties—that is, "what coverage the insured expected to receive and what the insurer was to provide, as disclosed by the provisions of the policy." *Id.* (cleaned up).  The policy

"must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy." *Id.*

### 1. *Plaintiff's Duties After Loss*

The Court concludes, as a matter of law, that Plymouth Rock Home is not obligated to pay Plaintiff's insurance claim under the Policy because Plaintiff failed to comply with his duties after loss. As noted, the Policy's "Duties After Loss" provision states that Plymouth Rock Home has no duty to provide coverage under the Policy if the policyholder's failure to comply with certain duties is prejudicial to Plymouth Rock Home. ECF No. 59-1 at 54. Defendants point specifically to two duties with which Plaintiff failed to comply: (1) a duty to cooperate with Plymouth Rock Home in its investigation of the claim; and (2) a duty to, as often as Plymouth Rock Home reasonably requires, provide Plymouth Rock Home with requested records and documents. *Id.*

"Generally, in the absence of a reasonable excuse, when an insured fails to comply with the insurance policy provisions requiring an examination under oath and the production of documents, the breach generally results in the forfeiture of coverage, thereby relieving the insurer of its liability to pay, and provides the insurer an absolute defense to an action on the policy." *Double G.G. Leasing, LLC v. Underwriters at Lloyd's, London*, 116 Conn. App. 417, 432 (2009) (quoting 13 Couch on Insurance § 196.23 (3d ed. 1999)). For the insurer's liability to be discharged, "the insured's noncompliance must be substantial or material." *Preka v. Vt. Mut. Ins. Co.*, No. CV-15-6024492-S, 2017 WL 6947747, at *2 (Conn. Super. Ct. Dec. 11, 2017) (citing *Arton v. Liberty Mut. Ins. Co.*, 163 Conn. 127, 133 (1972)). That is, an insurer may still be liable if the insured substantially complies with a policy condition. *Id.*

The insured bears the burden of proving that he substantially complied with the terms and conditions of an insurance policy. *50 Waterville St. Tr., LLC v. Vt. Mut. Ins. Co.*, 647 F. Supp. 3d

62, 72 (D. Conn. 2022).  While the question of whether an insured has substantially complied with contractual duties is ordinarily a question of fact, where a "fair and reasonable factfinder could reach only one conclusion," summary judgment in favor of the insurer may be appropriate.  *Id.* (quoting *Preka*, 2017 WL 6947747, at *2).

The Court finds that there is no genuine dispute of material fact regarding Plaintiff's failure to cooperate with Plymouth Rock Home's requests for information.  First, Plaintiff acknowledged during his deposition that he received Attorney Leslie's letter dated February 25, 2021, and acknowledged that the letter requested, among other things, banking records from 2019 through the date of the letter, credit card records, and tax returns.  *See* ECF No. 59-4 at 22–28.  He stated that he provided what he could, but admitted that he provided only "[p]artial" documentation in response to the requests because "that's all [he] had access to."  *Id.* at 23.

Second, Plaintiff failed to provide bank records covering the one-year period prior to the fire, even though records from 2019 and 2021 were included.  *Id.* at 24–25.  When asked about the missing records, Plaintiff claimed that he went to the bank to request banking statements specifically for the period requested in the February 25, 2021, letter and simply "provided what the bank gave" him to Mr. Cotter, without looking through the records.  *Id.*  Mr. Cotter similarly testified that he did not know why records from that period were missing and stated that he only forwarded the documents that he received from Plaintiff, without examining them.  ECF No. 59-13 at 15.

Third, despite admitting during his July 28, 2021, examination under oath—which occurred well before Plymouth Rock Home denied the claim in November of 2022—that he had credit cards with Discover and Capital One, as well as a brokerage account with Robinhood, Plaintiff failed to provide the records for these accounts even after Attorney Leslie followed up on

March 25, 2022, July 18, 2022, August 5, 2022, and September 2, 2022, to request further documentation.  *See* Billie EUO, ECF No. 59-7 at 72–74; ECF No. 59-13 at 21 (Mr. Cotter testifying that he was not sure if any of Plaintiff's credit card statements were provided, but if they were, they would be part of the package of banking records and that he was not aware of any other bank records, besides the Bank of America records, that were provided to Plymouth Rock Home); ECF No. 59-14 ¶¶ 17–26.  Neither Mr. Cotter nor Plaintiff responded to any of Attorney Leslie's follow-up requests.  ECF No. 59-14 ¶¶ 18, 20, 23, 26.

Fourth, Plaintiff failed to provide Plymouth Rock Home with his tax returns.  During his deposition, Plaintiff first denied that he provided his tax information, explaining that he did not know how to obtain his tax returns and never received the authorization form that would have allowed Plymouth Rock Home to retrieve them from the Internal Revenue Service.  ECF No. 59-4 at 28.  At a later point in the same deposition, however, Plaintiff testified that he was "pretty sure" he *had* provided his tax returns (and maybe even the authorization form) to Mr. Cotter to forward to Plymouth Rock Home, but stated that he "could be wrong."  *Id.* at 60–61.  Plaintiff's equivocation in his deposition as to whether he provided the tax returns does not create a genuine question of material fact on this issue.  *See Marsh v. City of New York*, No. 18-cv-1883 (HG) (RER), 2022 WL 3576712, at *5 (E.D.N.Y. Aug. 19, 2022) ("A party cannot create a genuine issue of material fact by contradicting his previous affirmed statement without explaining or resolving the contradiction.").

The record before the Court provides ample support for concluding that Plaintiff did not, in fact, provide tax returns to Plymouth Rock Home.  Mr. Cotter testified that he was not aware of any signed authorization forms or tax returns that were provided to Plymouth Rock Home, and that he would have seen them if Plaintiff had provided them to him.  ECF No. 59-13 at 21.  The

record demonstrates that Attorney Leslie sent the authorization form to Plaintiff on at least four different occasions—in letters dated February 25, 2021, March 25, 2022, and July 18, 2022, and an email dated August 5, 2022.  *See* ECF No. 59-14 at 9, 443, 445, 447.  It is difficult to see how Plaintiff could claim he never received the IRS authorization form when Plymouth Rock Home had provided it to him on at least four separate occasions—especially where Mr. Cotter was also sent the emailed correspondences from 2022.

Considering all of the evidence in the record, there is no dispute that Plaintiff failed to comply with his duties after the fire, even drawing all reasonable inferences in Plaintiff's favor. The Court also finds that Plaintiff's systematic and unexcused noncompliance with Plymouth Rock Home's document requests is substantial and material.  "The generally recognized rule is that an insurer is entitled to require of the insured sufficient records to substantiate the validity of the loss." *McCarthy v. Travelers Indem. Co.*, No. CV-97-0345443-S, 2000 WL 372801, at *8 (Conn. Super. Ct. Mar. 29, 2000).  In cases like the instant action, where the basis of the insurer's request for the insured's financial information is predicated on suspicions of arson, "[f]inancial records of the insured are . . . patently relevant to the insurance company's rightful scope of the investigation" and "requests for income records are certainly material inquiries."  *See, e.g.*, *Double G.G. Leasing*, 116 Conn. App. at 428, 434; *McCarthy*, 2000 WL 372801, at *8 ("Courts have found a material breach by the insured in failing to produce [financial] documents without explanation or excuse.").

Plaintiff's failure to produce the requested documents prejudiced Plymouth Rock Home in its investigation of Plaintiff's claim.  Plymouth Rock Home needed Plaintiff's financial and tax records in order to investigate "whether he and his family were experiencing financial distress that might raise questions regarding an unexplained fire and subsequent insurance claim."  Defs.' Br. at 23–25 (citing out-of-circuit authorities relating to materiality of financial information when

insurance company suspects fraud is afoot). Moreover, Plaintiff's credit card records could have clarified whether the 35 Wall Street property was insured prior to Plaintiff's purchase of the Policy, given that he testified that he would have paid for any prior policy with a credit card. ECF No. 59-7 at 72–73. As Attorney Leslie avers, Plymouth Rock Home was "unable to complete its investigation" into the fire loss claim because of Plaintiff's failure to provide the requested documents. ECF No. 59-14 ¶ 27.

As a result, the Court holds that Defendants are entitled to a judgment as a matter of law that Plymouth Rock Home is relieved of the obligation to pay the underlying insurance claim due to Plaintiff's breach of the "Duties After Loss" provision. Defendants' motion for summary judgment as to the breach of contract claim is therefore granted.

C. <u>CUIPA Violation</u>

The Court also grants Defendants' motion for summary judgment as to Plaintiff's CUIPA claim.

CUIPA prohibits unfair insurance practices and defines such practices to include unfair claim settlement practices. Conn. Gen. Stat. § 38a-816(6). A plaintiff may assert a private cause of action based on a substantive violation of CUIPA through CUTPA's enforcement provision. *Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110, 116–17 (D. Conn. 2014). To proceed with a CUTPA/CUIPA claim of unfair settlement practices against an insurer, the plaintiff must allege that the insurer "has committed the alleged proscribed act with sufficient frequency to indicate a general business practice." *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 165 (D. Conn. 2014) (citing cases). The plaintiff "must show more than a single act of insurance misconduct." *Id.* at 165–66; *see also Lees v. Middlesex Ins. Co.*, 229 Conn. 842, 849 (1994) (noting that an insurer's "alleged improper conduct in the handling of a single insurance claim, without any evidence of

misconduct . . . in the processing of any other claim, does not rise to the level of a 'general business practice.'").

In his complaint, Plaintiff cited to seventeen different complaints allegedly lodged with the Connecticut Insurance Department "alleging claim delays, unfair claims practices, unfair denial of claims, unfair claims procedures, and unsatisfactory settlement offers." ECF No. 1-1 at 5. These complaints are not part of the record on the present motion. In his deposition, Plaintiff acknowledged that he found these complaints online, and conceded that they were associated with "[i]nsurance companies in general," not "Plymouth Rock" specifically. ECF No. 59-4 at 75–77. While Plaintiff also testified during his deposition that he was aware of "documented" cases of Plymouth Rock Home unfairly denying claims, the record before the Court is devoid of any such documented complaints. It is the plaintiff's burden to demonstrate that the insurer has engaged in unfair insurance practices as a general business practice. *Harrigan v. Fidelity Nat'l Title Ins. Co.*, 214 Conn. App. 787, 820 (2022). On the present record, with no evidence of any complaints against Plymouth Rock Home's practices but for Plaintiff's current one, Plaintiff has not sustained his burden. No reasonable jury could conclude that Plymouth Rock Home committed unfair settlement practices with such frequency that it was a "general business practice" of the insurer to do so. *Belz*, 46 F. Supp. 3d at 165.

Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's CUTPA/CUIPA claim.

## IV.    CONCLUSION

For the reasons described herein, Defendants' motion for summary judgment, ECF No. 58, is GRANTED.  The Clerk of Court is directed to enter judgment for Defendants Plymouth Rock Assurance Corporation and Plymouth Rock Home Assurance Corporation.


**SO ORDERED** at Hartford, Connecticut, this 24th day of March, 2025.


 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE